**HADDAD v. TYLER PRODUCTION CREDIT ASS'N.**

**No. 6369.**

Court of Civil Appeals of Texas. Texarkana.

May 20, 1948.

Rehearing Denied June 10, 1948.

E. P. Price, Ray G. Thurmond, and J. Byron Saunders, all of Tyler, for appellant.

Pollard, Lawrence, Blackburn, Reeves & Jarrel, of Tyler, for appellee.

WILLIAMS, Justice.

Appellant, J. M. Haddad, defendant below, and Tyler Production Credit Association, plaintiff below, entered into a written contract dated August 24, 1942, under the terms of which Haddad, the landlord, leased to plaintiff for a period of five years, beginning August, 1942, and ending July 31, 1947, at an annual rental of $1,260, payable in equal monthly installments, a certain building therein fully described, situated in Tyler, Texas.

The provision in above lease contract pertinent on this appeal reads: "This lease may, at the option of the lessee, be renewed for a term of five years at the termination of this lease, in consideration of the agreement of the lessee to pay annually to the lessor, an amount to be then agreed upon, but not exceeding the present annual payment. Lessee is to give notice to lessor its desire to renew this lease 90 days prior to the termination thereof."

On November 1, 1945, the parties entered into a supplemental agreement, in writing, under the terms of which for a recited "consideration of $5.00 cash, each to the other in hand paid and of other valuable and sufficient considerations respectively passing to each," lessee (plaintiff) was granted the right to make certain alterations in the building at its sole cost, with the right at lessee's option to sublease to any party of its choice "for and during the term of such lease, any part of the property demised and let unto the lessee under the terms of such lease not in excess of 60% of the floor space of said building." The instrument in its preamble declares that it is intended to and did "amend and supplement the original lease contract only" in the particulars as therein set out, and concludes with the stipulation: "This agreement shall be and become a part of the original lease contract, but shall in no manner change or alter the terms and provisions thereof."

In January, 1947, plaintiff timely gave Haddad written notice that it exercised its rights under the option provisions and

would keep the premises for an additional five years' period and pay him the annual rental of $1,260, to be paid in equal monthly installments. Plaintiff and its sub-tenant to whom it subleased a part of the premises held over after July 31, 1947, and still occupy the premises.

Upon defendant's refusal to accept the monthly rentals timely tendered each month since July 31, grounded on defendant's claim that plaintiff's right to sub-let any portion of the building did not extend over but terminated on the expiration date of the original lease, namely, July 31, 1947, plaintiff brought this suit under the Uniform Declaratory Judgments Act, Title 46A, art. 2524—1, Vernon's Ann. Civil Statutes, to have judgment fixing and declaring the rights of plaintiff to sub-lease, if it sees fit, a portion of the premises (not exceeding 60% of the floor space thereof). In the course of the trial defendant stated he "was willing to give to plaintiff a renewal of the lease for a term of five years without plaintiff having the right to sublet any part of the building."

The judgment declared that plaintiff was invested with the right and privilege for and during the period from August 1, 1947, to July 1, 1952, if it sees fit, to sublet to any party of its choice, not in excess of 60% of the floor space of the building. This decree is grounded on the court's conclusions of law that (1) the two agreements "by operation of law, and the wording contained in such agreements," became one contract, an integral part of which was plaintiff's right to sublet; and (2) plaintiff's timely exercise of its option to extend the lease for an additional period of five years without the execution of a new lease contract.

It is to be observed that the option clause in the original lease reads: "This lease may, at the option of the lessee, be renewed for a term of five years at the termination of this lease."

Defendant insists that above language is to be construed only as a covenant to renew the lease and in the absence as here of a demand for and the execution of a new lease that all rights under both agreements terminated on July 31, 1947. Authorities from some of the other states which purport to draw a distinction between the terms "extension" and a "renewal" are cited in support of this position. See 51 C.J.S., Landlord and Tenant, § 54b-69; 32 Am.Jur. (Landlord and Tenant), Secs. 956, 975.

In our search we have found no Texas decision which has passed upon a contention similar to this urged by defendant. We are in accord with the holding in Orr v. Doubleday, 223 N.Y. 334, 119 N.E. 552, 554, 1 A.L.R. 338, wherein it is stated: "The distinction made by the body of judicial opinion we have referred to (with respect to the difference between the terms, 'extension' and 'renewal') is too refined and theoretical to be real, as a matter of law, in practical affairs. Men of ordinary learning, intelligence, and experience do not universally heed or invoke it in their business transactions. The law is neither just nor practical when it founds decisions of controversies exclusively upon that distinction." See also Marckres Bros. v. Perry Gas Works, 189 Iowa 1204, 179 N.W. 538, 540.

It is our conclusion and it is so held that when plaintiff timely gave the notice that it exercised its option for a renewal for an additional five years at the maximum rental, its rental rights for such additional period vested in it without the necessity of formally executing a new lease. "In the absence of an express provision (as here) that a new lease is intended to be executed, the presumption is that no lease is intended, but that the lessee is to continue to hold under the original lease." * * * "For, if the new lease, as is always the case, when executed, is but a substitute for, and a re-execution of, the old lease, it is in no wise more efficacious or obligatory, nor does it confer any greater rights than the old." Underhill on Landlord and Tenant (Ed. 1909) Sec. 803; Womble v. Walker, 181 Tenn. 246, 181 S.W.2d 5, 8. Neal v. Harris, 140 Ark. 619, 216 S.W. 67; cited in Springfield Fire & Marine Ins. Co. v. Republic Ins. Co., Tex.Civ.App., 262 S.W. 814, 817; Keith v. McGregor, 163 Ark. 203, 259 S.W. 725, 36 A.L.R. 311.

The record supports the trial court's conclusion that above two agreements from the wording contained in them became one contract, an integral part of which was plaintiff's right to sublet. The supplemental agreement in its preamble specifically declares that it was intended to amend the original agreement only to a certain extent as therein specified. In a further expression of their intent, the supplemental agreement provides that it shall become a part of the original lease contract, but shall in no manner change or alter the terms and provisions thereof. "It is * * * a rule of law that, when a contract has been changed by mutual consent of the parties, it becomes a new agreement, which takes the place of the old, and the new agreement consists of the new terms and as much of the old as the parties have agreed shall remain unchanged." Maddox Motor Co. v. Ford Motor Co., Tex.Com.App., 23 S.W.2d 333, 338.

The judgment of the trial court is in all respects affirmed.