MULLEN & WOODS, INC., Plaintiff, *v.* 615 WEST 57TH STREET, INC., Defendant.

Municipal Court of New York, Borough of Manhattan, Third District, September, 1932.

*Edward T. Corcoran,* for the plaintiff.

*Relyea, Bunnell & Bunnell* [*William C. Relyea* of counsel], for the defendant.

CHILVERS, J. The question is whether the plaintiff, a real estate broker, can recover here commission on a renewed term of a lease where the promise to pay such commission was oral.

The landlord had a long term lease of these and adjoining premises, and, in 1928, sublet to a tenant, procured by the plaintiff, under a lease, the original term of which was three years and two months, to expire May 1, 1931. This sublease contained a provision for a renewal for ten years additional, provided the tenant should, at the end of the original term, have duly performed all terms and conditions on his part to be performed, and provided the tenant should have given notice of its intention to renew on or prior to the 1st day of January, 1931. This provision went on further to say: " The new lease shall, however, provide for an additional rental to be paid by the tenant, which rental shall be determined by adding to the rental reserved in this lease any sum which the landlord herein shall be compelled to pay at any time during said extended term of ten years, as additional ground rent for the premises after May 1, 1931, pursuant to the terms of a certain agreement (between the landlord and the owner of the fee) providing for a readjustment of the ground rent of the premises and said other property on the 1st day of May, 1931, and again on the 1st of May, 1936, such additional rent to be added as imposed upon the landlord herein named by the owner of the fee." Then follows provision for apportionment of the rent between these premises and the " said other property," with stipulation for arbitration in event of failure of voluntary apportionment.

Commission on the original term, at the rate of one and one-half per cent of the aggregate rentals, was paid. Before January, 1931, the tenant gave notice of intention to renew, and in February, 1931, an extension agreement was executed for five years instead of the ten. No default occurred up to May first, so the extended term came into being and the premises are being occupied thereunder.

The testimony on behalf of the plaintiff is that, prior to the consummation of the original lease, an oral promise was made to pay the commission on the extended term when the option contained in the lease would be exercised and a new lease signed. The defendant says that this promise, if made, could not have been performed within one year, and that it is, therefore, unenforcible by reason of the Statute of Frauds.

The plaintiff argues that under the rule enunciated for this State in *Orr* v. *Doubleday, Page & Co.* (223 N. Y. 334) the extended term arose out of and under the original lease, so that the commission for the extended term accrued when the original lease was executed, within a year of the employment. Plaintiff further argues that, since under that rule the notice of intention to renew caused the new term to spring up at the expiration of the original term, which could be subsequently defeated only by non-performance of the covenants and conditions of the tenant prior to May 1, 1930, and since this notice could, under the option clause in the lease, be given at any time prior to January 1, 1931, even on the day after the making of the lease, it can recover on the oral promise to pay, on authority of *Williams* v. *Heckscher* (126 Misc. 176).

The rule in *Orr* v. *Doubleday, Page & Co.* is one of construction. It says that where a lease contains provision for renewal or extension at the option of the tenant, there is an extension of the term of the original lease on the exercise of the option, and that no new or additional act is required for such extension. The rule must yield to a contrary intention apparently expressed in the writing. The renewal provision here expressly indicates that a " new lease " was intended, which was to stipulate for rents as determined by the readjustment that was to be made in the agreement that existed between this landlord and the owner of the fee.

But whether the extended term arose without a new lease or could not arise until a new lease had been made, is not decisive of the question here. That would determine only the time when the obligations and rights under the extended term arose. Similarly the fact that the tenant might have given his notice of intention to renew within a year after 1928, which was the basis of the holding in *Williams* v. *Heckscher*, would determine only when the obligation arose between the tenant and his landlord as to the further term. The test of enforcibility contained in the Statute of Frauds is directed to the time of performance, and not to the time of the incurring of the obligation under which performance is to be made. The defendant here was to perform by paying the broker one and one-half per cent of the aggregate rentals of the further term. But until the readjustment and apportionment would be made, showing what the rent would be after May 1, 1931, it was manifestly impossible for the amount to be determined that the defendant was to pay the broker. The plaintiff's own witness testified that the defendant said: " What I will pay is a commission, a regular commission for the three years and two months, and in the event that Harter renews his option or exercises his option and signs the lease, I will pay the commission for the extended term *then*."

The promise, notwithstanding when it became effective, was that performance would be made after the rental under the new term would be ascertained. Therefore, the contract sought to be established on the evidence on this oral promise, which was admitted by me in the absence of a jury over the objection of counsel for the defendant, cannot base a cause of action.

But it does not follow that the plaintiff cannot have recovery. There is a second cause of action which seeks recovery on a *quantum meruit*. The contract, which is unenforcible by reason of the statute, is a nullity and non-existent in law. It is conceded that services were actually rendered by the plaintiff in procuring this tenant for the defendant. Although the extended term was for five years when the arrangement that was made through the efforts of the plaintiff as broker provided for an extended term of ten years, it seems to be conceded that an option of at least five years was contemplated from the beginning. Mr. Gehrung, the chief witness for the defendant, testified that the provision for ten years instead of five was probably a mistake in the drawing of the lease. It was not questioned on the trial that the five-year extension was made possible by the services of the plaintiff. The services rendered were beneficial to the defendant. It does not appear that they were contemplated to be rendered as a gratuity. In fact, there is a strong inference throughout that the defendant seeks to escape liability only under the Statute of Frauds. But where services have benefited a person who cannot be held liable because his promise was oral, the statute will not be permitted to be used offensively to overthrow a meritorious plaintiff and thus go beyond its purpose of acting merely as a shield against fraudulent claims. Recovery can be had on *quantum meruit*. (27 C. J. 363, § 441.) There is testimony on behalf of the plaintiff that the amount of the bill for this five-year term at one and one-half per cent of the aggregate rentals " is the fair and reasonable value for leasing property of that kind at the time in question." That evidence was not refuted nor was there any inclination on the trial to go into that phase of the case.

Judgment will, therefore, be given the plaintiff under the second cause of action for $999.56, with interest from April 2, 1931, as demanded in its complaint.