■ GURNEY, BECKER & BOURNE, Respondent, v BENDERSON DEVELOPMENT COMPANY, INC., Appellant.—Judgment affirmed, without costs. Memorandum: While it is settled law that an account stated cannot arise unless it is based upon some indebtedness resulting from previous transactions between the parties (1 NY Jur, Accounts and Accounting, §§ 5-7), the fact that part of the balance represented by an account is not payable at the time it is rendered and is dependent upon conditions precedent does not deny to a statement the character of an account stated (see *Jugla v Trouttet,* 120 NY 21). Plaintiff negotiated on behalf of defendant a five-year lease with a five-year option to renew. Following this transaction, plaintiff sent the letter showing a present indebtedness arising from a 5% commission on both a temporary occupancy agreement and the initial five-year term of the negotiated lease, along with a statement that an additional commission would become payable if the tenant remained for a second five-year term. Defendant paid the amounts then due according to the letter. On the facts presented, there was a sufficient creditor-debtor relationship between plaintiff and defendant, and it was not improper for the court to instruct the jury with respect to an account stated. Furthermore, the instruction that the silence of a person receiving an account without objection will be construed as his consent to the account as rendered was, upon the circumstances of this case, a correct charge under the law of implied contract. Although the assent of a person to be charged under an implied contract is necessary, a person may conduct himself in such a manner that his assent may fairly be inferred (see *Miller v Schloss,* 218 NY 400, 407). Silence operates as an assent when a party is under a duty to speak, or when a failure to speak is inconsistent with honest dealing and misleads another (see *Matter of Albrecht Chem. Co. [Anderson Trading Corp.],* 298 NY 437, 440). Plaintiff offered both testimonial and documentary evidence showing that it was the practice of real estate brokers in the area to charge as a commission 5% of rent due under a lease and 5% of additional rents falling due as a result of the exercise of an option to renew the lease. Defendant's president acknowledged that he was aware of this practice. In light of these facts, it was incumbent upon defendant to protest seasonably the terms stated in plaintiff's letter, and the court's instruction in this respect was proper. If under this view it was improper for the court to use the phrase "account stated" in its instruction, nevertheless the error was cured by the remainder of the charge. The jury was instructed that it could render a verdict for plaintiff only if it found an implied agreement between defendant and plaintiff that

a commission would be due and owing to plaintiff for the services performed. Finally, as to consideration for the agreement to pay commissions upon renewal of the lease, we note only that the lease was acceptable to defendant and that it was competent for the parties to agree upon any compensation they thought proper for the services of plaintiff in procuring it *(Williams v Heckscher,* 126 Misc 176, 178, affd 220 App Div 755). The jury weighed the conflicting testimony and found for plaintiff. All concur, except Simons and Hancock, Jr., JJ., who dissent and vote to reverse the judgment and grant a new trial in the following memorandum: Defendant appeals from a judgment on a general verdict in favor of plaintiff for $9,500 in this action by plaintiff real estate broker for commissions allegedly owing to it by defendant landlord. Plaintiff negotiated on behalf of defendant a five-year lease with a five-year option to renew on the original terms of the lease executed in 1967 between the defendant and its tenant, the State of New York (Department of Health). There was no express agreement, orally or in writing, between the plaintiff and defendant regarding commissions as to either the base term or the optional renewal term of the lease. On September 5, 1967 plaintiff sent a bill to defendant for $10,311.50 for commissions due on the base term of the lease. The bill contained an additional notation typewritten below the statement of the amount due: "Additional commission due and payable if tenant remains for another five years after 9/30/72." There was conflicting testimony as to whether defendant made any protest to this notation. The tenant exercised the option to renew in August, 1972. There is no claim that plaintiff was the procuring cause of the exercise of the option. On January 3, 1973 plaintiff submitted its bill for $9,500 based on 5% of the total additional five years' rental for the option period. Defendant's president returned this bill with the notation, "Sorry, do not pay on options, never have and won't, Nate." There is evidence that the exercise of the renewal option under the circumstances was of no benefit to defendant but solely a benefit to the tenant. (See *Mullen & Woods v 615 West 57th St.,* 146 Misc 599.) The court submitted the case to the jury on two separate theories: as an action based on an account stated for the amount of the renewal commission arising from the retention without protest of the broker's notation concerning the renewal option and as an action on an implied contract to pay a commission on the renewal term. With respect to the notation at the foot of the bill, the court instructed the jury: "where an account showing a balance has been received, a party must within a reasonable time examine it and if he disputes its correctness, he must make his objection known. * * * *the silence of the person receiving an account without making objection within a reasonable time will be construed as acquiescence in its justness and he will be bound by it as if it were a stated account. * * * If you find that there was no timely objection, you may find that the defendant consented to the account as rendered in 1967."* (Emphasis supplied.) The effect of this charge was that the jury was instructed that the question of liability could turn solely on whether or not defendant retained the September 5, 1967 letter without protest. If defendant did retain it, it would have "acquiesced in its justness and would be bound by it." Thus, without more, proof of retention without protest would permit a finding of liability. An account stated is an agreement between the parties to an account based upon prior transactions between them. The parties must bear the relation to each other of debtor and creditor, and an account stated cannot arise unless there is some indebtedness owing. (1 NY Jur, Accounts and Accounting, §§ 5-7; *American Lithographic Co. v Dorrance-Sullivan & Co.,* 241 NY 306, 312; *Bauer v Ambs,* 144 App Div 274,

275.) Here, plaintiff conceded that at the time it sent the September 5, 1967 letter there was no commission due on the renewal option which had not yet been exercised. Since an account stated cannot arise where, as here, there is no existing debt, the court was clearly in error. Even were the jury to believe plaintiff's testimony that defendant did not object to the notation of the September 5, 1967 letter, an account stated could not have arisen. Defendant took an exception to the charge. Inasmuch as a general verdict was returned, it is impossible to determine whether or not the erroneous charge was the basis of the verdict, and a new trial should be ordered. In submitting the case on the theory of implied contract the court, in our opinion, also committed fatal error. Defendant requested that the court charge: "In order to find the defendant liable to the plaintiff for commissions on the renewal options, you must find that there was a special agreement between the plaintiff and the defendant wherein their minds met in that the defendant would pay the plaintiff in the event the tenant exercised the renewal option." The request should have been granted. The general rule is that "a broker who procured a lease of the lessor and who claims commission on a renewal thereof must recover, if at all, on the basis of an express contractual provision for commission on renewals" (79 ALR2d 1063). In our opinion this rule is the law in New York (see *Allwin Realty Co. v Barth,* 161 App Div 568, 570). In *Mullen & Woods v 615 West 57th St.,* (146 Misc 599) in reversing and dismissing the complaint in an action for renewal commissions, the Appellate Term held (pp 599-600) "In the absence of special agreement, the plaintiff would not be entitled to commissions on subsequent extensions of which it was not the procuring cause. Nor could the plaintiff recover on the theory that by securing the inclusion of the renewal clause in the original lease it performed services which were of benefit to the defendant. On the contrary, by assenting to the clause which gave the tenant the option of renewal, the defendant subjected itself to a liability without corresponding benefit." *Mullen* has been cited with approval or followed in other New York decisions (see *Rosenfeld Realty Co. v Cadence Ind. Corp.,* 75 Misc 2d 634; *Mitchnik v Brennen,* 159 Misc 287; *Schulz & Co. v Realty Assoc.,* 17 NYS2d 924). (Appeal from judgment of Erie Supreme Court—broker's commissions.) Present—Moule, J. P., Cardamone, Simons, Hancock, Jr., and Denman, JJ.